will first hear from Ms. Kupchick. May it please the Court. My name is Joanna Kupchick and I represent the Plaintiff Appellant Andrew Roberts. The issue before this Court is where to strike a balance between promoting efficiency of the district court systems in handling the large volume of prisoners' rights cases versus effectuating a pro se prisoners' rights relief under 42 U.S.C. 1983. Here Andrew Roberts' right was not safeguarded in the district court in the interest of efficiency and this Court in turn should safeguard that right to his relief by remanding this case and reversing summary judgment and directing the district court to give Andrew Roberts more time to serve Mary Slinger so that Andrew Roberts' right to relief under 1983 is properly adjudicated. What about the argument that Ms. Slinger is deceased and the statute of limitations has run? Your Honor, Ms. Slinger, there is still an opportunity under the rules to serve Ms. Slinger's representative and to have that Court look at Ms. Slinger under the deliberate indifference standard as to its decision on the parties' cross motions for summary judgment. Here under Greeno v. Daly, the subjective component as to Ms. Slinger was not reached and instead she was referred to by the district court as an attending nurse that is not a defendant. Mr. Roberts has the right to have Ms. Slinger's actions reviewed by the district court under that subjective component where each prison official is looked at to see if that prison official has a sufficiently culpable state of mind. Ms. Kopchick, can I ask you, is that the full scope of the appeal as you see it? In other words, there were, I don't know how many other defendants, but there were multiple other defendants and there was a ruling on summary judgment as to those defendants that was adverse to your client, right? Correct, Your Honor. Okay, none of that is before us, correct? Correct, Your Honor. So you're not arguing that there was an error in the deliberate indifference conclusion as to Defendant A or B? We're only focused on this whole mess of confusion about the Slingers and all that? That is correct, Your Honor. We are only focusing on Ms. Slinger and whether she can still, and whether Mr. Roberts can get an extension of time to serve Ms. Slinger. Is there any way, given the district court's finding here, that Ms. Mary Slinger could be found deliberately indifferent on the record that was before the court, given the court's finding that nobody else was? Your Honor, I believe that that is a determination that the district court has to make. However likely or unlikely it is that that happens, it's still a right that Mr. Roberts is entitled to under the deliberate indifference standard that the court did not take the time to do in its summary judgment opinion. So help me out here. If, say, the case gets remanded, Nurse Slinger is served or her estate or representative is served, she's allowed to come in and then the court addresses the summary judgment motions that were pending and analyzes her deliberate indifference or the claim against her for deliberate indifference. Is that how you foresee the case going forward? Yes, Your Honor. And then the district court will have done its job in terms of looking to see whether there was an issue of fact as to Ms. Slinger was deliberately indifferent to Mr. Roberts' medical needs. And that was something that the court didn't do when it stated that Mary Slinger was not a defendant in its order. When the court had multiple opportunities to give Andrew Roberts an extension of time based on this court's jurisdiction as to the permissive nature for claims that are gone in IFP. So the district court found Nurse Slinger as one of the defendants when it went through its 1915A screening order and allowed Andrew Roberts to proceed against her in his claims. And you aren't suggesting any bad faith on the part of any of the defendants in Ms. Slinger not getting served, are you? No, Your Honor, I am not. So where do we draw the line when the question comes down to, it looks like everybody dropped the ball here to some extent. Where does the fault lie? I believe, Your Honor, that the fault lies in terms of the smallest granule, even if you take into consideration that the memorandum of understanding between the Wisconsin DOJ and the court was solely in the interest of efficiency. When you look at that memorandum, you see specific steps that the Wisconsin DOJ is supposed to take when they can't find a defendant of sort of follow-up process. Here, that follow-up process wasn't effectuated. What about here, though, where it doesn't look like they couldn't find her? It looks like they thought she was the same person as someone else. And I believe, Your Honor, that that is something that on the face of Andrew Roberts' complaint, you can see that he references two separate nurses, Nurse Tabb and Nurse Slinger, doing separate actions. And although he later confuses as to what nurse was doing what in his motion for summary judgment, he never confuses that nurse as the one and the same person. So why wasn't your client put on notice that he needed to speak up and say something? With the acceptance of service that was filed at Document 12 of the district court, where it names the individuals that they served and indicates they accept service, as to Ann York, it specifically says, same as Ann Tabb and Ann Slinger. That was filed on the docket. Your client would have received it because he was pro se, so his address was there. Why didn't that put him on notice that, oh, there are two people here, and they think it's one person I need to speak up and ask that Miss Slinger be served? Your Honor, I believe that my client was not put on notice at that point because, one, because of his unfamiliarity with the civil adjudicatory system, and, two, based on the caption that the Assistant Attorney General of Wisconsin had and the way that the interrogatories were answered as to all defendants, in terms of having been made aware that something was wrong, that certainly was not enough to trigger any sort of awareness from him because when he later responded to the Wisconsin District Attorney's motion for summary judgment, his main argument was that Mary Slinger was still a party to this action and their arguments. Therefore, as to her not being a defendant were not enough to survive, which the district court held otherwise. But that shows that he wasn't made aware. That shows he may not have understood it until later, but I know he's pro se and we view pro se pleadings liberally, but we do still expect them to comply with the rules. So why wouldn't this acceptance of service and let me throw in there the defendant's answer and affirmative defenses that, again, specifically identify Ann York as formerly Tabb or Slinger and they don't list Mary Slinger separately. Why wouldn't that be enough to put Mr. Roberts on some type of notice? Your Honor, it should have been enough to put him on some type of notice, but more to the point, it should have also put the court onto some type of notice, the court being familiar with these types of claims with its own screening order. But are you saying the court has the burden then for every case that it has of making sure defendants are served? No, Your Honor. It is a defendant's responsibility. It is a plaintiff's responsibility to serve all defendants. However, in this specific instance with a pro se indigent plaintiff, I would argue that the court did not follow the precedent, which asks them to look over service of process, over defendants. If there are no further questions, I would ask this court to reverse order of summary judgment and remand and grant the district court more time to serve Mary Slinger. Thank you. Thank you, Ms. Kopchick. We'll now hear from Mr. Murphy. May it please the court, my name is Mike Murphy. I represent the defendants at Hallease. The disputed issue on appeal is whether this case should be sent back for the district court to consider out service, or no service was attempted below. The plaintiff did not ask court assistance with service, did not ask the defendants to accept service, and did not ask for the deadline to serve to be extended before that deadline expired. But does the plaintiff have to ask for it under 1915? Under 1915, under this original screening that a district court does, does the plaintiff, pro se plaintiff have to ask for assistance in service, or is that something under the statute that the court gives? Under Rule 4, a plaintiff has to ask for assistance in service. Even an informer proper's plaintiff must ask for assistance in service if it wants the marshal to serve. The screening, the 1915 screening process is just whether the claims survive an initial first look. It then moves on to whether service is necessary, and Rule 4 addresses what happens for service, and it's specifically 4C3 addresses a marshal or party appointed may serve, but it and courts addressing the case all show that a plaintiff does, in fact, have to ask to have that done, yes. The answer is that no, the case should not be remanded. It should be affirmed for two primary reasons, forfeiture and lack of good cause. As to forfeiture, the plaintiff did not raise the issues that are being made now, despite multiple opportunities to do so. The timeline was gone through at the appellant's arguments. I'm not going to go through it again. But at none of the time of the acceptance of service, the answer, or the notice of appearance did the plaintiff say that that's not who he meant, and the party, but in by far the best position. What do you mean that's not what he meant? That he meant to sue someone else, that there was another person involved, that he was intending that this complaint be directed at. Wasn't there a docket entry that showed that service had been accepted on behalf, a docket entry, not a certificate, on behalf of Mary Slinger? My recollection of the docket entry, it's in the appendix, I think it may even be page 20, is that it sort of relisted all the names that first showed up in the first complaint. Right. So it wasn't a distinction, for example, between Ann Slinger or Mary Slinger or Nurse Slinger when Ann York's name. Yeah, but it came accompanied with a notation, did it not, that service had been accepted. That service had been accepted, yes. So when the argument is made, you know, look, this guy's not paying attention, he should be reading the papers, if he was reading the litigation papers, he'd figure all this out. You know, we don't have a lot of sympathy for not paying attention to the papers. Well, the court's docket had suggested, it stated that the defendant had accepted service. Yeah, this is outside the record. I think that ordinarily incarcerated plaintiffs do not have access to the docket, to the electronic docket. I wouldn't think that he would have seen that, but even if he had, I think that if there's any tension between the very plain and express representation by the defendants, by the Department of Justice, of who they were accepting service on, trumps what was put in the docket entry, which is not made by a party or by the court or any other authority. The only reason I'm asking, the broader concern that I have with this, Mr. Murphy, is just that this just seems, if you sat down to come up with a law school hypothetical, trying to confuse people as much as possible about who was served and who wasn't served and mixed last names, this case would be a prime candidate for the best hypothetical you could come up with. I think you may be right, and I think that addressing that sort of practical point, I think the practical resolution here is who knew who the plaintiff wanted to serve. It was the plaintiff, not the defendants. And Ann York was, in fact, Nurse Slinger. But wasn't there a point in the summary judgment proceedings where he spoke up and said, hey, hey, hey, no, Mary Slinger is somebody that I want to sue? So the first time the name Mary Slinger appears anywhere is in the defendant's motion for summary judgment. Oh, right, right. Isn't that some indication he wanted to litigate against somebody he believed was a real person named Mary Slinger? I'm sorry, the defendant. Maybe I misspoke. The defendant's motion for summary judgment. I thought the plaintiff at some point, though, raised it. In the plaintiff's reply, he included a footnote. It's quoted in the briefs as something to the effect of that this person's status was misstated as a non-defendant. That was after the service deadline. It was not a request of any sort, and I don't think it is anything that resolves the Rule 4 burden for the plaintiff to serve parties who they want to serve. But the plaintiff's own summary judgment motion talked about and made allegations against Nurse Slinger, separate and apart from Nurse Tabb. So while you say the first time Nurse Slinger was mentioned was in response to the defendant's motion, that's not accurate. The plaintiff, in moving for summary judgment, moved for summary judgment against Nurse Slinger, Mary Slinger. Well, against Nurse Slinger, and that's important because Ann York was Nurse Slinger. And I think that that is… Ann is Mary's daughter. That's correct. Ann is Mary's daughter. And so I think it's important that it does not say Mary Slinger. It does say Nurse Slinger, and the defendant understood that there was a Nurse Slinger. But how about that it also says Tabb? Because Ann Slinger, Ann York was also Ann Tabb at some point. So to add to the confusion, Mr. Roberts' summary judgment moved for summary judgment against Nurses Jensen, Tabb, Lyon, Judy, and Slinger. As I think is conceded in all the briefs, the plaintiff mixed and confused the names a number of times. And I think one maybe way to look at the case is to say under Rule 4, whose obligation is it to not be confused? And it's the plaintiff. It's the plaintiff who needs to know who the plaintiff wants to sue, not the defendants and not the court. Another important thing here is that there's no potential… But didn't the plaintiff in his complaint make it clear who he wanted to sue? No, very much not. But based on the district court screening order, it seems that the district court was able to distill it down as to who he had stated a claim against, including Nurse Slinger. Including Nurse Slinger. Ann York was Nurse Slinger and did treat the plaintiff. But hold on, hold on. There's a real person named Mary Slinger, right? Unfortunately, she's deceased, but there's a real person named Mary Slinger. Yes. And that real person, Mary Slinger, provided medical care to the plaintiff. Yes. On the issues that are pertinent to the allegations in his complaint. Yes. Okay. So why would we not assume that the plaintiff wanted to sue that Mary Slinger? Because Mary Slinger, that name does not appear in the complaint. Absolutely nowhere. Nurse Slinger appears. And Ann York, previously TAB, was Nurse Slinger. Mary Slinger's name does not appear anywhere in the complaint. I read it like five times. I actually had someone else double check it. It does not appear there. But did Nurse TAB provide medical care to the defendant on the issues that are alleged in the complaint? Yes. So why not assume he wants to sue both of them? He doesn't have a clue what all their names are. Well, he was the person who was treated, so I suggest he would have had a clue. And beyond that, these service decisions – I didn't see prisoner cases. They don't collect first and last names. They receive care. They react to the care. They'll file a lawsuit. I think it would be incorrect to place that burden on the defendants, particularly at the point where they are first gathering information about a case and getting ready to answer people. These come in more than one a day, unfortunately. And this complaint named Ann TAB and Nurse Slinger. In 2011, approaching the six-year statute of limitations deadline, when that complaint came in, there were no such people. And the defendants did their diligence, went beyond the memorandum of understanding requirements, and made the entirely reasonable deduction, oh, I bet this person means to sue Ann York, whose former name was TAB and who was, in fact, Nurse Slinger and treated him at the time. I don't doubt that. I think it was an honest mistake, and you can certainly understand why. You have an Ann Slinger and a Mary Slinger, and Ann Slinger has different names at different times throughout. I don't think there's anything in the record that would support that the defendants intentionally were trying to hide Mary Slinger. But the question comes down to, okay, there was an honest mistake. The district court had directed that both Ann TAB and Mary Slinger be served. Nurse Slinger. And I think that difference is very important because Ann York was Nurse Slinger, truly, literally was Nurse Slinger. But maybe to get more to the core of your point, if there's legitimate confusion on behalf of the defendants or group of defendants over who is going to be sued, whose responsibility is it under pleading standards and Rule 4 and everything to know who needs to be sued? And it's the plaintiff's responsibility, not the defendant's. In my 10 seconds, I'll just say that for the reasons stated in the brief, there is also no potentially meritorious claim against Mary Slinger, and for all those reasons we request that the decision below be affirmed. Thank you, Mr. Murphy. Thank you. Ms. Kupchak, any rebuttal? You may. One minute. Thank you, Your Honor. Just to point to the record, Nurse Ann TAB, Nurse Slinger, did treat Roberts, and she did so at an earlier time than Nurse Mary Slinger. And that separation of time shows that Andrew Roberts was considering two separate people when he drafted his complaint. And second, if you look at Rule 4C3, the way the defendant reads the two sentences together, I believe should be read separately, where it says, at plaintiff's request, the court may appoint a U.S. marshal, a deputy marshal, or a person specifically appointed by the court. The court must so order if the plaintiff is authorized to proceed IFP. Now, the memorandum of understanding is not the same as a marshal appointment, but, however, there is that mandate to appoint a person that effectuates and streamlines the process in these sorts of cases. But doesn't that follow up on if the plaintiff requests? Isn't that in contrast to the court may order? I believe that if plaintiff's request, the court may appoint. The fact that the second sentence says the court must so order, it doesn't say that at the plaintiff's request. So your position is that Rule 4C3 does not require the plaintiff to ask for it? I believe that the rule right on its face does not, but that other courts have interpreted it as requiring it. Thank you. Thank you, Ms. Kopchick. Ms. Kopchick, Mr. Haverly, you were appointed by the court. You have our great thanks for your representation during the case. Thank you, Mr. Murphy. The case will be taken under advisement.